**IN THE DISTRICT COURT OF THE UNITED STATES FOR THE**

**MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION**

**UNITED STATES OF AMERICA  )**
**                          )    CRIMINAL ACTION NO.**
**     v.                   )       2:14cr509-MHT**
**                          )          (WO)**
**BERNADETTE DICKERSON      )**

**OPINION AND ORDER**

**This cause is before the court on defendant Bernadette Dickerson's motions for revocation of United States Magistrate Judge Terry F. Moorer's order that she be detained pending sentencing. Dickerson pled guilty to one count of knowingly attempting to bribe an individual not to testify against her son in a criminal prosecution, in violation of 18 U.S.C. § 1512(b)(2)(A). A district court may revoke or amend a magistrate judge's detention order under 18 U.S.C. § 3145(b). The court reviews the magistrate judge's detention order de novo. See United States v. King, 849 F.2d 485, 489-490 (11th Cir. 1988).**

Based on the court's independent and de novo review of the transcript of the evidentiary hearing on detention, the arguments of the parties, and the motions, briefs, and attached evidentiary submissions, the court will deny the Dickerson's motions and adopt the magistrate judge's detention order. See King, 849 F.2d at 490-491 (setting forth procedures for district courts to follow on motions to revoke or amend detention orders entered by magistrate judges).

I.

The magistrate judge found Dickerson's detention required under 18 U.S.C. § 3143, which sets forth the conditions under which a court may order a convicted defendant released pending sentencing. "Unlike a defendant who has not yet been convicted and for whom the statute gives a presumption for [release] ... except in certain circumstances, see 18 U.S.C. § 3142(b), once a defendant has been convicted, albeit not yet sentenced, the burden shifts to defendant."

<u>United States v. Strong</u>, 775 F.2d 504, 505 (3d Cir. 1985). Section 3143(a) creates a rebuttable presumption of detention for all defendants, with the exception of those defendants "for whom the applicable [sentencing] guideline ... does <u>not</u> recommend a term of imprisonment." 18 U.S.C. § 3143(a) (emphasis added). Here, Dickerson concedes that the United States Sentencing Guidelines recommend imprisonment for her conviction, and the court so finds.[1] Therefore, the presumption of detention applies to this case.

Under § 3143(a), "[t]he court 'shall order' detention unless defendant shows by 'clear and convincing evidence' that (1) s/he is not likely to

---

1. Under USSG § 2J1.2, the applicable base-offense level for Dickerson's offense is 14. As the court does not have evidence before it that would allow it reliably to determine Dickerson's criminal-history category, the court will assume for purposes of argument that Dickerson has the lowest criminal-history category of I. With a criminal-history category of I, Dickerson would be subject to a prison term of 15-to-21 months. Even if she received a 3-point offense-level reduction for acceptance of responsibility, the Sentencing Guidelines would still recommend a sentence of imprisonment.

flee or (2) pose a danger to the safety of the community or any person therein if released." United States v. Strong, 775 F.2d 504, 505 (3d Cir. 1985) (quoting § 3143(a)).  See also United States v. Manso-Portes, 838 F.2d 889 (7th Cir. 1987) (per curiam) (same); cf. United States v. Giancola, 754 F.2d 898, 900-01 (11th Cir. 1985) (per curiam) (release pending appeal).

The court will evaluate the evidence regarding risk of flight first and potential danger second.


II.

Dickerson argues that she is not a flight risk because she has never before fled from legal problem. The evidence before the court on this issue is mixed. Dickerson has failed to appear for multiple traffic tickets over the years, but it is unclear how long ago these failures occurred, and the government conceded that she ultimately resolved the cases.  Dickerson testified that she missed these traffic-court

appearances due to hospitalizations. However, Dickerson has a demonstrated history of lying to this court: she first wrote a letter to the court seeking to withdraw her guilty plea, then wrote another letter in which she attempted to convince the court that someone else had written the first letter. She later admitted to writing both letters. Therefore, because Dickerson's word cannot be trusted and without proof in the form of medical records, the court does not accept her medical excuse, and there is no evidence that she failed to appear for any other cases.

Dickerson further points out that she is a lifelong resident of Montgomery County, Alabama, and testified that she has a home, business, husband, and other family in the county. While Dickerson has not presented any evidence that she is a lifelong resident of Montgomery County, the court assumes for purposes of this discussion that she could prove this fact. The testimony of the probation officer confirmed that she lives in Montgomery in a home owned by a family member

with her husband and son.  Dickerson also testified that she wants to get out of jail so that she can operate her tax-preparation business in advance of the April 15th IRS income-tax filing deadline.  If she is unable to work during the coming month and a half, she contends, she will lose much of her planned income for this year.  However, as demonstrated above, Dickerson has a history of lying to this court.  Given this history, the court is not inclined to accept her word about her business as proof without some documentation.  She has not provided the court with any documentary evidence or testimony from a third party confirming the existence of her tax business.

Accordingly, while Dickerson has put forward some evidence that she is not likely to flee, it is not clear and convincing evidence sufficient to overcome the presumption of detention.  In any case, the court has some concern that Dickerson might attempt to flee if released and that no conditions the court could impose would reduce that risk.

What causes the court the most concern is Dickerson's willingness to resort to lying and manipulation to get out of jail, combined with her history of resisting arrest and recent volatile behavior.  During her incarceration, Dickerson, who is represented by counsel, repeatedly has written directly to the court, making wild accusations in her letters against a variety of people.  As mentioned above, in one letter, she attempted to mislead the court by claiming she had not written one of the letters.  While her desperation to get out of jail is certainly understandable, her tactics create concern that she cannot be trusted.

Furthermore, Dickerson has a recent history of extreme impulsivity and an oppositional attitude towards court personnel and law enforcement.  She twice has been accused of physically resisting arrest, has been convicted of harassment; has antagonized and fought with other inmates in the jail; and has been hostile with court probation officers.  Indeed, she

even had to be removed from the courtroom during a hearing about her son's criminal case in this court. Conditions such as home confinement and electronic monitoring would not suffice to ensure her appearance in court given her lack of respect for court officials and out-of-control behavior.

### III.

Dickerson also has failed to show by clear and convincing evidence that she is not likely to pose a danger to others if released.  Dickerson argues, in response to the government's evidence that she has twice been accused of physically resisting arrest, that those prior incidents should not be held against her because she was under extreme stress at the time. However, Dickerson is under extreme stress now, so the court sees no reason to distinguish Dickerson's current predicament from the ones underlying her previous episodes with police.

Dickerson also points out that there is no evidence in the record that she threatened violence or used violence against the witnesses she sought to bribe. While this is true, the record contains other evidence suggesting her willingness to resort to violence. Jail records establish that Dickerson recently engaged in a physical altercation with another inmate in the jail, and that she and the other inmate had to be pulled apart to stop the fight. Additionally, as mentioned earlier, Dickerson recently was ordered removed from court during her son's case and engaged in oppositional behavior with the probation officers, who would have to supervise her were she released. While verbally oppositional behavior in itself is not necessarily dangerous, it reflects that Dickerson lacks both respect for officials and emotional control, two traits which could easily lead to dangerous behavior.

In support of her request for release, Dickerson also mentions that she suffers from a number of serious medical conditions. However, she has presented no

medical records or other evidence to support her health claims, and here again the court is not inclined to accept her claims without additional proof.[2]

Finally, Dickerson has not suggested any conditions that would reduce the risk of danger to others that she would pose if released. Nor can the court conceive of any, given her recent volatility.

In sum, Dickerson has failed to overcome the presumption in favor of detention pending sentencing with clear and convincing evidence that she is unlikely to flee or pose a danger to others if released under any conditions.

***

Accordingly, it is ORDERED that:

(1) The motions for revocation or amendment of the detention order (doc. nos. 33 and 39) are denied.

---

2. The court further notes that these medical conditions were not disabling enough to prevent her from fighting in the jail.

    **(2)** The detention order of the United States Magistrate Judge (doc. no. 25) is adopted.

DONE, this the 11th day of March, 2015.

                      /s/ Myron H. Thompson
                      **UNITED STATES DISTRICT JUDGE**